## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

| | |
|---|---|
| MIRANDA STOVALL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:24-CV-336-GNS |
| | ) |
| JEFFERSON COUNTY BOARD OF | ) |
| EDUCATION, d/b/a JEFFERSON COUNTY | ) |
| PUBLIC SCHOOLS, | ) |
| | ) |
| MARTY POLLIO, in his official capacity as | ) |
| Superintendent of Jefferson County Public | ) |
| Schools, | ) |
| | ) |
| AMANDA HERZOG, in her official capacity | ) |
| as Assistant General Counsel to Jefferson | ) |
| County Public Schools, | ) |
| | ) |
| and | ) |
| | ) |
| NCS Pearson, Inc., a Minnesota corporation, | ) |
| d/b/a Pearson VUE, | ) |
| | ) |
|     Defendants. | ) |

---

## PLAINTIFF'S RESPONSE TO DEFENDANT PEARSON'S MOTION TO DISMISS

---

### INTRODUCTION

The Court should deny the motion to dismiss filed by Defendant NCS Pearson, Inc. (Pearson) because this Court has federal question jurisdiction, the case is ripe, and all *Grand Trunk* factors favor discretionary review. Plaintiff Miranda Stovall's (Mrs. Stovall) action under the Declaratory Judgment Act seeking a declaration that providing copies of surveys in response to an open records request is a fair use and not copyright infringement should be heard.

## SUMMARY OF THE ARGUMENT

Pearson tries to make this case more complex than it is. This is a simple case. Mrs. Stovall is asking this Court to issue a declaratory ruling on a single question:

> Under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, is a state agency prohibited from disclosing copyrighted surveys in response to an open records request from a concerned citizen?

Mrs. Stovall's reason for asking the Court to answer this question is also simple. Kentucky's Open Records Act exempts public records "the disclosure of which is prohibited by federal law." KRS 61.878(1)(k). When Mrs. Stovall asked Jefferson County Public Schools (JCPS) for copies of surveys the school planned to administer to her children, JCPS refused, citing only that exemption and explaining that the surveys were the "copyrighted intellectual property of Pearson." (Doc. 1 ¶ 31.) JCPS believes that providing Pearson's copyrighted materials to Mrs. Stovall is "prohibited by [a] federal law," specifically, the Copyright Act. Mrs. Stovall disagrees. But the parties agree on one major point that is relevant to this motion: *if* providing Pearson's surveys to Mrs. Stovall is, in fact, prohibited by the Copyright Act, then JCPS behaved rightly. The resolution of that question falls under the exclusive jurisdiction of the federal courts. Because that is the only question presented, Pearson's motion should be denied.

The Copyright Act is clear: "Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords . . . ." 17 U.S.C. § 106. As the name "copyright" implies, ordinarily only Pearson can distribute copies of its copyrighted surveys. If JCPS did that, under § 106 standing alone, that would infringe Pearson's copyright. But § 106 is "[s]ubject to sections 107 through 122 . . . ." *Id.* The very next section provides that "[n]otwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work . . . is not an infringement

of copyright." *Id.* § 107. Fair use is more than an affirmative defense; it does not merely excuse infringing conduct—it is non-infringing conduct. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016), *cert. denied* 582 U.S. 914 (2017) ("Given that 17 U.S.C. § 107 expressly authorizes fair use, labeling it as an affirmative defense that *excuses* conduct is a misnomer[.]" (emphasis added)); *cf. Castle v. Kingsport Publ. Corp.*, No. 2:19-CV-00092, 2020 U.S. Dist. LEXIS 233919, at *12 (E.D. Tenn. Dec. 14, 2020) (explaining that "[f]air use is a statutory exception to copyright infringement" asserted as an affirmative defense). It is a complete exemption from copyright infringement. *Sony Corp. of Am. v. Universal Studios, Inc.*, 464 U.S. 417, 433 (1984) ("[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute or who makes a fair use of the work is not an infringer of the copyright with respect to such use."). If the copying is a fair use, it does not infringe Pearson's copyright. If it does not infringe Pearson's copyright, then it is not "prohibited by federal law." If this copying is a fair use, then JCPS is mistaken about the nature of federal law. This is not a question that Mrs. Stovall could bring in state court; that is why she has brought it to this Court.

Federal courts, with their exclusive jurisdiction over federal copyright law, are the only venue in which Mrs. Stovall's claim can be heard. 28 U.S.C. § 1338 ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights."). It is plain from the face of the complaint that Mrs. Stovall's claim "arises under" the Copyright Act. Defendant JCPS withheld the surveys from Mrs. Stovall based on its (mistaken) view of *federal* law. There is no controversy over state law. Again, all parties agree that *if* providing copies of the surveys to Mrs. Stovall is "prohibited by federal law,"

then JCPS acted rightly.[1] The present controversy between the parties is whether JCPS's claim about what federal copyright law prohibits is correct.

Mrs. Stovall's claim is ripe because JCPS made a final decision. Pearson misunderstands the declaration sought when it argues that this case is unripe. The declaration would only pertain to JCPS's liability if it provided the surveys to Mrs. Stovall. This case does not seek to litigate Mrs. Stovall's hypothetical future liability should she receive the surveys and redistribute them. This case does not seek to litigate whether JCPS could withhold the documents on some other state law basis that it has yet to invoke. The controversy over JCPS's provision of the surveys to Mrs. Stovall is ripe because JCPS denied Mrs. Stovall's request based on its misunderstanding of federal copyright law. And bringing a Declaratory Judgment Act case arguing fair use against copyright infringement is ordinary practice. *See, e.g.*, *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 522 (2023) ("Goldsmith notified [the Andy Warhol Foundation (AWF)] of her belief that it had infringed her copyright. AWF then sued Goldsmith and her agency for a declaratory judgment of noninfringement or, in the alternative, fair use."). This case is not different. JCPS notified Mrs. Stovall it would not comply with her request because it believed that would infringe Pearson's copyright. Mrs. Stovall sued for a declaratory judgment of fair use.

---

[1] Pearson suggests that this case "requires construction" of multiple exceptions to the Kentucky Open Records Act. (Doc. 12 at 2.) Not so. Not only did JCPS exclusively cite the (1)(k) exception, (*see* Doc. 1 ¶ 31)—which requires no construction of any state law provision—but Mrs. Stovall is only here seeking declaratory judgment about copyright. Any questions about whether other exceptions might be applied are outside the scope of this lawsuit and are unripe because JCPS, who has not joined the motion to dismiss, (*see* Doc. 11), never raised them. Indeed, it was only as part of a litigation strategy that Pearson devised alternative grounds to possibly deny the request. JCPS is the only party that even theoretically can assert those alternative grounds for denial because the exemption belongs to the state agency. *See* KRS 61.880(1) (explaining that the state agency to which the request is directed must, upon denial of a request, provide a response specifying the exception relied upon and the grounds for it). Pearson may not assert that those exceptions are applicable as that is JCPS's prerogative, not Pearson's. Pearson is only a party to this case because it is about Pearson's copyright itself rather than the open records request directly.

4

This case presents the situation envisioned by the Declaratory Judgment Act: a request for legal clarity about a topic within exclusive federal jurisdiction that will resolve an ongoing and actual controversy. The declaration would settle the controversy and clarify the rights of the parties. This case was not brought for improper procedural fencing or a race for res judicata. And because copyright law is within the sphere of exclusive federal jurisdiction, this declaratory action will not increase federal-state friction and there is no alternative state remedy available to resolve this controversy. This Court should exercise its discretion to issue a declaration and should deny Pearson's motion to dismiss.

## ANALYSIS

When a defendant moves to dismiss for lack of subject matter jurisdiction, the burden shifts to the plaintiff. *See Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). The plaintiff's burden is "not onerous." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). In its review, the Court must "construe the complaint in a light most favorable to the plaintiff, accept as true all of plaintiff's well-pleaded factual allegations, and determine whether the plaintiff can prove no set of facts supporting [the] claims that would entitle him to relief." *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997). The legal burden placed on the plaintiff is low; the complaint "will survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth." *Michigan S. R.R. Co.*, 287 F.3d at 573 (quoting *Musson Theatrical*, 89 F.3d at 1248). Mrs. Stovall's complaint exceeds this standard.

## I.    Federal Question

This case presents a federal question because the disagreement between the parties is about JCPS's application of federal copyright law. The Declaratory Judgment Act must be combined

5

with an independent source of federal jurisdiction. *See California v. Texas*, 141 S. Ct. 2104, 2115 (2021); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). Here, the legal dispute arises under the Copyright Act, a federal statute that confers jurisdiction on federal courts. 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights."). That jurisdiction is exclusive. *Id*. ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights."); *see Ritchie v. Williams*, 395 F.3d 283, 285 (6th Cir. 2005) ("[T]he statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act . . . .").

"Even though state law creates appellant's causes of action,[2] its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Tr. for Southern Cal.*, 463 U.S. 1, 13 (1983). As such, "federal courts, when determining declaratory judgment jurisdiction,

---

[2] Here, federal law creates Plaintiff's cause of action through the cooperation of the Declaratory Judgment Act and the Copyright Act. *See, e.g.*, *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943) (explaining that the Declaratory Judgment Act provides "essentially an equitable cause of action"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 133–34 (2007) (deciding Declaratory Judgment Act case where no party yet had a cause of action available under the federal statute the claim arose under); *cf. id.* at 142 (Thomas, J., dissenting) (explaining why neither party had a cause of action). This aligns with the Supreme Court's understanding of the Declaratory Judgment Act in *ultra vires* challenges. *See Abbott Labs v. Gardner*, 387 U.S. 136, 142 (1967) ("There is always an appropriate remedy in equity in cases where an administrative officer has exceeded his authority and there is no adequate remedy of law, . . . [and that] protection is given by the so-called Declaratory Judgments Act . . . ." (quoting approvingly from H.R. Rep. 2755)). Regardless of whether state or federal law creates her cause of action, though, the second part of the inquiry remains the same: does her claim "arise under" federal law? State law only created Mrs. Stovall's entitlement to the documents; it is not the body of law her claim "arises under." Federal law creates (1) her cause of action, the Declaratory Judgment Act; (2) the law her Declaratory Judgment Act claim "arises under," the Copyright Act; and (3) the potential threatened coercive action related to her Declaratory Judgment Act claim, again the Copyright Act.

often look to the 'character of the threatened action.'" *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)). "That is to say, they ask whether 'a coercive action' brought by 'the declaratory judgment defendant' (here [Pearson]) 'would necessarily present a federal question.'" *Id.* (quoting *Franchise Tax Bd.*, 463 U.S. at 19). And here, if Pearson brought "a coercive action to enforce its rights, that suit would *necessarily present* a federal question." *Franchise Tax Bd.*, 463 U.S. at 19 (emphasis added).

Understanding the proper framing, this Court has jurisdiction. The Western District of Michigan summarized the analytical process:

> Because the Declaratory Judgment Act is procedural only and does not create subject-matter jurisdiction, to determine whether the claim asserted in a declaratory judgment action "arises under" federal law, the court must consider whether the facts alleged in the plaintiff's well-pleaded complaint show that the *defendant* could file a coercive action arising under federal law. In other words, *it is the character of the threatened action*, and not of the defense, that determines whether there is federal-question jurisdiction. Thus, in declaratory judgment actions the court will analytically "realign" the parties as they would appear in an imaginary coercive action, to assure that federal-question jurisdiction exists. [T]he exercise is analytical only and does not involve forcing parties to take positions adverse to each other against their wills.

*Mich. Dep't of Cmty. Health v. Woodcare X, Inc.*, No. 1:09-758, 2009 U.S. Dist. LEXIS 102453, at *3–4 (W.D. Mich. November 4, 2009) (internal citations omitted) (second emphasis added).

There is no question that Pearson's available coercive action arises exclusively under federal law. Analytically "realigning" the parties, Pearson could file a copyright action against JCPS and Mrs. Stovall for copyright infringement, pursuing injunctive relief to stop JCPS from disseminating its copyrighted work and prevent Mrs. Stovall from receiving or requesting it. The availability of that legal action is obvious from the denial email to Mrs. Stovall. (Doc. 1 ¶ 31.) Indeed, JCPS itself implicitly acknowledged Pearson's copyright and its fear of an infringement

action. JCPS explained that it was "not able" to provide the materials because it was "prohibited by federal law or regulation" from doing so. The reasonable inference is that JCPS believes it must assert Pearson's copyright and that it will not produce the surveys until a federal court determines that the disclosure is noninfringing because JCPS is wary of that potential liability. There can be no serious question that this available coercive action—a copyright infringement suit—would present a federal question. Because the realigned coercive action presents a federal question, this declaratory judgment action does as well. That is sufficient to show subject matter jurisdiction.

Pearson attempts to short circuit this jurisdictional analysis by claiming that this case is an attempt to appeal under KRS § 61.878. (Doc. 12 at 7.) It is not. Mrs. Stovall does not disagree with JCPS's understanding that if providing copies of the surveys infringes Pearson's copyright, the documents are not subject to disclosure under Kentucky's Open Records Act. As Pearson itself states, "Plaintiff ultimately seeks a declaration that JCPS's disclosure of Pearson's survey would not be 'prohibited by federal law,' as provided in KRS 61.878(1)(k)." (Doc. 12 at 6–7.) That is exactly correct—and it is a separate question from whether JCPS should produce the documents.

Pearson makes the perplexing argument that whether the requested disclosure is "prohibited by federal law" is not a federal question. (*See* Doc. 12 at 2.) This is incorrect and mischaracterizes Mrs. Stovall's claim as an appeal of a denial under the state Open Records Act. The parties are not in a dispute over whether JCPS must produce copyrighted materials under the Open Records Act. Again, all parties agree that JCPS may not provide copies of the requested records under KRS § 61.878(1)(k) if doing so would be copyright infringement. They are only in a dispute over whether doing so would actually infringe Pearson's copyright. This is not a question that state courts can resolve under 28 U.S.C. § 1338(a). That is why this is not a state open records case; it is a federal declaratory judgment action that only federal courts can resolve.

8

Copyright law is not tangential to the claim here—it is the only legal issue present. Given that the denial turned exclusively on federal copyright law, no matter what different reasons Pearson (but not JCPS, the Kentucky entity capable of asserting any exemptions) now proffers to this Court, Mrs. Stovall's requested relief confers jurisdiction on this Court because it "depends on the construction or application of . . . the laws of the United States." *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 156, 199 (1997). That is enough. Mrs. Stovall's complaint does not "merely . . . relate[] to a product that is the subject of a copyright," *Severe Records, LLC v. Rich*, 658 F.3d 571, 581 (6th Cir. 2011), nor does her complaint assert in response to a state-law claim "[t]he possible existence of a defense under the Copyright Act," *RDI of Michigan, LLC v. Merit Indus., Inc.*, No. 11-13866, 2012 WL 13009105, at *2 (E.D. Mich. Jan. 12, 2012). (*See* Doc. 12 at 8 (citing these cases).) Pearson's available coercive action is based on federal law, as, necessarily, is this declaratory action by Mrs. Stovall. And this case does not align well with *Courier-Journal*; in fact, the differences between the two cases show why this case belongs in federal court and that one did not. *See Courier-J., Inc. v. Cabinet for Health & Fam. Servs.*, No. 3:11-09-DCR, 2011 U.S. Dist. LEXIS 60287 (E.D. Ky. June 1, 2011); (*see also* Doc. 12 at 8 (citing *Courier-Journal*)).

*Courier-Journal* involved a Kentucky Open Records Act case filed in state court and removed to federal court by the defendant. 2011 U.S. Dist. LEXIS 60287, at *2. The defendant argued that because the plaintiff asserted that the defendant had violated the Open Records Act *and* a separate federal statute by refusing disclosure, the case presented a federal question. *Id.* at *6. But this theory had some gaping holes. First, the federal statute in question—the Child Abuse Prevention and Treatment Act (CAPTA)—has no cause of action. *Id.* Second, as the court explained, CAPTA had been harmonized by a state court, which had interpreted the state open

records provision in question to require the same disclosure. *Id.* And third, there is not a federal statute expressly divesting state courts of jurisdiction over CAPTA.

All three differences matter. First, Mrs. Stovall did not bring a claim under the Kentucky Open Records Act, and she did not bring a claim in state court. The "well-pleaded complaint" rule is key to the inquiry. The plaintiff, as master of the case, decides what she is suing over. Second, unlike CAPTA, the Copyright Act does create a cause of action. That is particularly important in determining declaratory judgment jurisdiction, where the inquiry turns on the nature of the potential coercive action. And third, a state court is not competent to rule on the federal question presented here. Congress expressly denied jurisdiction to state courts. 28 U.S.C. § 1338(a).

Pearson's reliance on *Board of Chosen Freeholders of Burlington v. Tombs*, 215 F. App'x 80 (3d Cir. 2006) (unpublished), is also misplaced. (Doc. 12 at 8 (citing this case).) *Board of Chosen Freeholders* is this case's inverse. *Board of Chosen Freeholders* concerned a state entity bringing a declaratory judgment action against a citizen. *Id.* at 81. That case's key holding is that "[a] district court lacks jurisdiction where, *but for* the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state-created action." *Id.* This is the same as the realignment framework employed in the Sixth Circuit. Accordingly, the Third Circuit considered what coercive action the defendant, an individual citizen, might bring. *Id.* at 81–82. His only available coercive action was under state law using the state open records act. *Id.* at 82.

Mrs. Stovall's claim is different; the same question asked in this case produces the opposite answer. Pearson cannot bring an action under Kentucky's Open Records Act against Mrs. Stovall and JCPS to prevent the disclosure of its copyrighted surveys. Pearson is neither a Kentucky citizen seeking access to public records nor do Kentucky state courts have jurisdiction to entertain the copyright claim it would bring. But it *can* bring an action under federal copyright law to punish

JCPS for disclosing the surveys, to restrain JCPS from disclosing them, to prevent Mrs. Stovall from using them once acquired, or to prevent her from continuing to ask. Because that action would take place in federal court, this Court has subject matter jurisdiction.

Under these circumstances, there is federal subject matter jurisdiction for this declaratory judgment action because "it is the character of the threatened action, and not of the defense, that determines whether there is federal-question jurisdiction." *Mich. Dep't of Cmty. Health*, 2009 U.S. Dist. LEXIS 102453, at *4.

## II.     Ripeness

In challenging ripeness, Pearson again misunderstands both the case and the declaration Mrs. Stovall seeks. To satisfy ripeness, Mrs. Stovall need only show "an actual present harm or a significant possibility of future harm." *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997) (quotation omitted). Mrs. Stovall seeks a declaration about whether JCPS correctly interpreted federal copyright law when it told her that disclosing Pearson's surveys to her would be copyright infringement. That is a ripe controversy. It has already happened. *See id.* at 279 (explaining actual present harm satisfies ripeness). And, as Mrs. Stovall explained in her complaint, it will continue to happen. (*See* Doc. 1 ¶ 8 ("Mrs. Stovall requests copies of materials whose copyright is owned by Defendant Pearson under Kentucky's Open Records Act and intends to do so in the future.")); *see also Magaw*, 132 F.3d at 279 (explaining significant possibility of future harm satisfies ripeness).

Because of its misunderstanding, Pearson tilts at windmills, citing a bevy of pre-enforcement cases discussing ripeness, a doctrine about when an impending threat is substantial enough for declaratory judgment. (*See* Doc. 12 at 9–11.) But here, JCPS already denied Mrs. Stovall's request based on its reading of federal copyright law. "So where does ripeness come in?

Ripeness here is, in our view, a red herring." *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1059 (6th Cir. 2022) (holding sufficient injury where defendant already denied plaintiff's job application); *see also id.* at 1059 n.4 ("Ripeness is really, or at least paradigmatically, a doctrine about *pre-enforcement* challenges. . . . [Here, w]e are instead confronting an already-executed act . . . ."). Because this case concerns an already-executed act, it is a ripe controversy.

The disconnect is between what Pearson claims Mrs. Stovall is seeking and the declaration she truly seeks. Pearson claims:

> Plaintiff is essentially asking this Court to issue an advisory opinion on the viability of a hypothetical "fair use" defense that she would raise if, hypothetically, JCPS produced Pearson's surveys to Plaintiff, Plaintiff published those surveys, and Pearson or some other party sued or threatened to sue Plaintiff for infringement.

(Doc. 12 at 10 (citing Compl. ¶ 43).)

Pearson is incorrect. That is not Mrs. Stovall's claim. That is not her argument. That is not the declaration she requests. And Paragraph 43 of Mrs. Stovall's complaint does not support Pearson's assertion that she wants an opinion on the viability of a fair use defense if she tried to publish any documents JCPS provided her. Instead, it reads,

> There is a real and actual controversy between Plaintiff and Defendants as to whether *Defendant JCPS's provision of the requested surveys to Mrs. Stovall* would infringe Defendant Pearson's copyright.

(Doc. 1 ¶ 43 (emphasis added).) That controversy—not the hypothetical one Pearson describes— is the subject of this litigation: whether JCPS, by providing copies of Pearson's surveys to Mrs. Stovall, would be violating federal law. And that makes this case unlike the ones Pearson cites. In each, the problem with the claim was that nothing had happened to the plaintiff and there was no clear threat that something would happen to the plaintiff. (*See* Doc. 12 at 11 & n.5.) But here, something has happened to Mrs. Stovall—JCPS denied her request based on its mistaken belief that federal copyright law prohibited it from fulfilling her request and thus that fulfilling it could

expose JCPS to a lawsuit from Pearson. Mrs. Stovall just wants this Court to decide whether that was a correct interpretation of federal copyright law.

Should JCPS eventually provide copies of Pearson's surveys to Mrs. Stovall and should Mrs. Stovall then publish them, the requested declaration would not prevent Pearson from bringing a copyright infringement action against Mrs. Stovall if it wanted to. The sought declaration would only prevent Pearson from bringing a copyright infringement action against JCPS, the party who could otherwise be liable absent a declaratory judgment. That controversy is ripe. It is present and before the Court: JCPS has already told Mrs. Stovall it cannot comply with her otherwise valid request because the materials are the "copyrighted intellectual property of Pearson" and it is therefore "prohibited by federal law" from disclosing them. (Doc. 1 ¶ 31.)

### III.   Discretionary Review

This Court should exercise its discretion to retain jurisdiction over this case because all five *Grand Trunk* factors favor jurisdiction. *See Grand Trunk W.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). The factors are:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 326. Simply put, "the *Grand Trunk* factors and their cousins in other circuits direct the district court to consider three things: efficiency, fairness, and federalism." *W. World Ins. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). "A district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law; if there were evidence of procedural fencing; or if the sought-after declaration would somehow be frivolous or purely

advisory." *Id.* at 760. But "[t]his case presents none of those concerns." *See id.* A district court can abuse its discretion by refusing to exercise jurisdiction under the Declaratory Judgment Act when to do so is "judicially indiscreet." *Am. States Ins. v. D'Atri*, 375 F.2d 761, 763 (6th Cir. 1967).

Indeed, the facts here make it easy to exercise discretion. It is unlike the *Grand Trunk* precedents Pearson cites. Here, there is no related state case, and the controversy is over federal copyright law, not an insurance claim or state-law tort.[3] The first and second factors favor jurisdiction because the declaratory action would settle the controversy and clarify the legal relations between the parties. The third factor favors jurisdiction because there is no pending state case and thus no evidence of procedural fencing or racing. The fourth factor favors jurisdiction because this declaratory judgment action would decrease federal-state friction by resolving a complex matter of federal law over which federal courts have exclusive jurisdiction while *not* ruling on any matters of state law. The fifth factor favors jurisdiction for a similar reason: state courts are divested of jurisdiction over matters of copyright like this case, meaning that no alternative remedy exists. This Court should exercise jurisdiction over this case.

---

[3] This stark difference becomes clear upon review of the cases Pearson cites on the *Grand Trunk* factors, (*see* Doc. 12 at 12–17), none of which resemble this case—even if you squint very hard. Every single case Pearson cites discussing the *Grand Trunk* factors involves *both* at least one, and often multiple, state-court cases *and* concerns a preclusive declaration of state law. *See Grand Trunk*, 746 F.2d at 325 (request for declaratory judgment review of a state-court order on indemnity for negligence); *Western World Ins. Co.*, 773 F.3d at 758 (insurance dispute with two different pending related state-law cases); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) (insurance dispute with related state-court tort case); *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 29 F.4th 792, 795 (6th Cir. 2022) (insurance dispute with multiple related state-court cases); *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 268–69 (6th Cir. 2007) (insurance dispute with related state-court wrongful death case); *AmSouth Bank v. Dale*, 386 F.3d 763, 771 (6th Cir. 2004) (complex litigation with related state-court action to recover embezzled funds); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 810–11 (6th Cir. 2004) (insurance dispute with related state-court case); *Encompass Indem. Co. v. Gray*, 434 F. Supp. 3d 560, 566 (W.D. Ky. 2020) (insurance dispute with related state-court case).

### 1. The Declaration Settles the Controversy and Provides Valuable Clarity

The first two *Grand Trunk* factors assess "(1) whether the declaratory action would settle the controversy" and "(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. These two factors are generally considered together, *see Scottsdale Ins.*, 513 F.3d at 557, because they are closely intertwined. These factors favor jurisdiction here.

The controversy between the parties is whether federal copyright law would be violated, as JCPS claims it would, if JCPS provided the surveys to Mrs. Stovall. This Court can conclusively resolve that controversy. With a favorable ruling, Mrs. Stovall would be free to return to JCPS and repeat her request for the surveys, knowing that JCPS cannot refuse to provide them based on a mistaken understanding of federal copyright law. That is the whole scope of the present controversy, and it is capable of resolution by this Court. Pearson argues that because the whole dispute (might)[4] be larger than this one federal issue, this Court should decline jurisdiction over this singular controversy. Not so.

---

[4] Pearson argues that other exemptions might be relevant and cites *University of Kentucky v. Kernel Press, Inc.*, for the proposition that the court there considered an exemption not originally invoked by the state agency. (Doc. 12 at 13.) But there are three obvious problems with Pearson's argument. First, it is JCPS, not Pearson, that can invoke any exemptions. Pearson is a Minnesota corporation. JCPS is the Kentucky state entity the request was sent to. Second, Kernel Press's very first ORA request was met with a FERPA claim. *See Univ. of Ky. v. Kernel Press, Inc.*, 620 S.W.3d 43, 48 (Ky. 2021) (discussing the University's response to the original March 21 request before turning to the April 7 request). *Kernel Press* in fact stands for the proposition that a state agency must assert and explain an exemption in response to the request—not invoke it mid-litigation (and it certainly does not stand for the proposition that an out-of-state corporation can invoke the exemption). *See id.* at 51 ("The University failed to explain how specific exemptions applied to particular records, thereby failing to fulfill its statutory ORA responsibilities under KRS 61.880(1), which requires an agency to state the 'specific exception authorizing withholding of the record.'" (describing the lower court opinion being affirmed)). Third, Pearson's unsupported factual claim that JCPS *might* like to apply four of the exemptions, (*see* Doc. 12 at 13 (citing exemptions (a), (b), (c), and (g))), defies reasoned explanation. Pearson appears to argue (1) that providing copies of blank surveys to Mrs. Stovall would "constitute a clearly unwarranted invasion of personal

Indeed, the Sixth Circuit explained exactly this in *Scottsdale Insurance Company*. 513 F.3d at 554–56. There, in the insurance context, the court considered whether declaratory judgment was appropriate to resolve a lesser controversy of a greater dispute. *Id.* at 555 (citing and quoting in parenthetical *Northland Ins. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("[W]hile the declaratory judgment would not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds."); *Allstate Ins. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987) ("The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue.")). It held that it was. *Id.* at 556. In its analysis, the court concluded that the distinguishing factors favoring jurisdiction were that (1) the issue could not be considered in the state court action; (2) the issue was legal, and so would not require discovery; and (3) the issue was not being litigated in state court. *See id.* at 555–57.

All three of those are true here. A state court lacks jurisdiction over federal copyright actions and so this controversy could not be considered there. *Cf. Nat'l Council of Teachers Quality, Inc. v. Curators of the Univ. of Mo.*, 446 S.W.3d 723, 729 (Mo. 2014) (en banc) ("[T]his court lacks the authority to determine whether a particular use of copyrighted materials constitutes fair use, as federal courts have 'original jurisdiction of any civil action arising under [the Federal

---

privacy," KRS 61.878(1)(a); or (2) that those same blank surveys are "compiled and maintained for scientific research," KRS 61.878(1)(b); or (3) that those surveys are trade secrets, even though Pearson agreed to let Mrs. Stovall inspect them, KRS 61.878(1)(c); or (4) that the surveys are "used to administer a licensing examination, examination for employment, or academic examination," KRS 61.878(1)(g), none of which could reasonably describe the surveys in question that are akin to psychological or personality testing (and one would wonder again why Pearson would permit them to be inspected if it is worried about the "answers" being leaked). And all of this still ignores the greater point: this Court is needed to resolve the federal question. If these hypothetical questions of state law need resolution, Mrs. Stovall will sue in state court over them.

Copyright Act].'").[5] The issue here is primarily legal and the parties are likely to agree about the facts, such as what documents were requested, what they are, and who owns their copyright. And there is no parallel state court proceeding.

The two factors are considered together because "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins.*, 513 F.3d at 557. This case presents no reason to deviate from this well-established principle. Because a declaration will conclusively resolve whether JCPS would be violating federal copyright law by providing the requested surveys to Mrs. Stovall, it will help clarify the legal relations in issue. The first two factors favor jurisdiction.

### 2. There is No Procedural Fencing or Racing

Pearson correctly states, but wholly misreads, the third factor, which favors jurisdiction. To repeat Pearson's correct statement of the law: Under the third factor, the Court considers "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326 (cleaned up). This factor "is meant to preclude jurisdiction for '*declaratory plaintiffs*' who file their suits mere days or weeks before the coercive suits filed by a '*natural plaintiff*' and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale Ins.*, 513 F.3d at 558 (citation omitted) (emphases added). Mrs. Stovall is the declaratory plaintiff here. Pearson is the natural plaintiff. Pearson does have an available coercive action, even at this early stage in the dispute. As discussed

---

[5] Pearson cites this case for the proposition that "other state courts have concluded that copyright ownership satisfies similar public-records exceptions *because of* the federal judiciary's exclusive jurisdiction over copyright litigation." (Doc. 12 at 17.) Pearson is mistaken both about the holding of the case—which is that state courts lack jurisdiction to consider fair use in adjudicating a public records request—and about how that influences the factors. The fact that state courts are affirmatively divested of jurisdiction over copyright law weighs overwhelmingly in favor of this Court issuing a declaratory ruling. *See* 28 U.S.C. § 1338.

above, it could bring a coercive action under the Copyright Act seeking to enjoin JCPS from providing the surveys. Possibly, it could sue Mrs. Stovall seeking to enjoin her from distributing, receiving, or requesting Pearson's copyrighted materials. But these things have not happened. In any case, the same key fact would be true: those actions would be brought under the Copyright Act and would thus be within the exclusive jurisdiction of federal courts.

This case cannot satisfy the *Scottsdale Insurance* test Pearson relies on for the third factor. There is no state action at all and certainly not one looming that Mrs. Stovall raced to the courthouse to foreclose. There is not even a potential coercive state court action that Pearson could bring against Mrs. Stovall or even against JCPS. And even if there were, there is no evidence that Mrs. Stovall brought this claim "for the purpose of" racing Pearson to the courthouse to end up in federal court rather than state court. *Id.* at 558. The third factor favors jurisdiction because no procedural fencing or racing occurred or was even possible.

### 3.   The Declaration Decreases Federal-State Jurisdictional Friction

Because there is no parallel state action, the fourth factor favors jurisdiction. The fourth *Grand Trunk* factor considers whether the declaratory judgment "would increase friction between our federal and state courts and improperly encroach upon state jurisdiction[.]" *Grand Trunk*, 746 F.2d at 326. The Sixth Circuit has split this factor into three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins.,* 513 F.3d at 560. Implicit in these sub-factors is that the likelihood of friction is curtailed where there is no parallel state court action. *See, e.g.*, *id.* at 559–60. Thus, where, as here, there is no parallel state action, the fourth factor favors jurisdiction.

Even ignoring the full picture, the individual sub-factors favor jurisdiction as well. There are no underlying factual issues here. There is no state trial court. Since there are no factual issues, even if there were one, it would not be in a "better position" to evaluate those nonexistent factual issues than this Court. The third sub-factor weighs most strongly in favor of jurisdiction: federal law dictates the resolution of this declaratory judgment action premised on federal copyright law. The two cases Pearson cites on this factor bear little resemblance to this one. In both *Rogers* and *Wombles*, the requested remedy was an order to a state agency to disclose the records. *See Rogers v. Ezell*, No. 5:18-CV-00091-TBR-LLK, 2019 WL 1262752, at *2 (W.D. Ky. Mar. 19, 2019); *Wombles v. Cabinet for Health and Fam. Servs.*, No. 08-CV-159-WOB, 2008 WL 4443019, at *3 (E.D. Ky. 2008). Mrs. Stovall is not asking this Court to order JCPS to do anything. She is asking this Court to resolve a question of federal copyright law. She intends to take that answer back to JCPS, at which point JCPS will not be able to claim that federal copyright law makes it unlawful to disclose the surveys. But JCPS will be free—within the boundaries of state law—to respond to her request as it sees fit. That is far different from the mandamus requests of *Rogers* and *Wombles*. The fourth factor strongly favors jurisdiction.

### 4.   There is No Alternative Remedy to the Declaration

The fifth *Grand Trunk* factor looks at "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. This factor favors jurisdiction for two reasons. First, as Pearson's brief effectively highlights, there is no available alternative state court remedy precisely because copyright law is exclusively within the jurisdiction of federal courts.

(Doc. 12 at 17.) Second, because even if Kentucky state courts were an alternative remedy, federal courts are the "better or more effective" remedy for resolving complex questions of federal law.

Although Pearson claims that "the question of whether a fair use of public records will negate KRS 61.878(1)(k)'s exception for disclosures that are 'prohibited by federal law' has already been addressed by the Kentucky Attorney General," (Doc. 12 at 16 (citing Ky. Op. Att'y Gen. 19-ORD-144 (2019)), that is not true. That opinion explains that a valid copyright is, in certain situations, a sufficient reason to withhold public records. Mrs. Stovall agrees. The opinion does *not* discuss fair use, and it is unclear why Pearson claims that it does. *See* Ky. Op. Att'y Gen. 19-ORD-144 (2019) (containing zero instances of the phrase).

State courts routinely hold that they lack jurisdiction to decide precisely this question, and Pearson cites three of them. (Doc. 12 at 17 (citing *Nat'l Council for Tchrs. Quality*, 446 S.W.3d at 730 (holding it lacked jurisdiction to decide whether a public records request was a fair use); *Pictometry Int'l Corp. v. Freedom of Info. Comm'n*, 59 A.3d 172, 192 (Conn. 2013) (same); *Ali v. Philadelphia City Plan. Comm'n*, 125 A.3d 92, 104–05 (Pa. Commw. Ct. 2015) (same)).) This alone means that there can be no alternative state court remedy for the claim Mrs. Stovall brings: one over which state courts have no jurisdiction because it is about federal copyright law.

That same fact means that even if Kentucky state courts did have jurisdiction, they would not be a "better or more effective" remedy. Just as state courts are the experts in state law, federal courts are the experts in federal law. The fifth factor favors jurisdiction.

## CONCLUSION

This Court should deny Pearson's motion to dismiss. A federal court is the proper forum to resolve complex questions of federal copyright law.

Respectfully submitted,

<u>August 19, 2024</u>.                    /s/ Benjamin I. B. Isgur

Braden H. Boucek
  Tenn. BPR No. 021399
  Ga. Bar No. 396831
Benjamin I. B. Isgur
  Va. Bar No. 98812
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Tel.: (770) 977-2131
bboucek@southeasternlegal.org
bisgur@southeasternlegal.org

/s/ Christopher Wiest
Christopher Wiest (KBA 90725)
50 East Rivercenter Blvd., Ste. 1280
Covington, KY 41011
513-257-1895 (v)
chris@cwiestlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent by the Court's electronic filing system to all parties indicated on the electronic filing receipt.

Respectfully submitted,

/s/ Benjamin I. B. Isgur
BENJAMIN I. B. ISGUR